In the Matter of WEIS SECURITIES, INC., Debtor.

Edward S. REDINGTON, Trustee, Defendant-Appellant,

v.

UNITED MIZRAHI BANK LTD., Plaintiff-Appellee.

No. 73 Civ. 2332.

United States District Court, S. D. New York.

May 19, 1976.

James B. Kobak, Jr., Stephen J. Boatti, Hughes, Hubbard & Reed, New York City, for trustee Redington.

Leonard Epstein, Berlack, Israels & Liberman, New York City, for Mizrahi.

WYATT, District Judge.

This is an appeal by the trustee for the liquidation of Weis Securities, Inc. (Weis) under the Securities Investor Protection Act of 1970 (SIPA, 15 U.S.C. § 78aaa and following) from an order of Bankruptcy Judge Babitt, filed November 20, 1975.

The order provides for allocation of the total of administrative expenses incurred by the trustee during the period of May 30, 1973 to May 31, 1974 between the "single and separate fund" (fund) and the "general estate" (15 U.S.C. § 78fff(c)(2)(B). Under SIPA, assets held in the single and separate fund are for the benefit of "customers" of the debtor as therein defined; assets held in the general estate are for the benefit of the general creditors of the debtor.

### 1.

On May 10, 1974, the trustee applied to Judge Babitt for an order allocating 80% of the trustee's administrative expenses for the period in question to the fund and 20% to the general estate. In support of the application, the trustee submitted documentary data concerning the amount of time actually expended by the trustee's attorneys, accountants and the like for the benefit of (a) customers and (b) general creditors, respectively. The 80%–20% allocation between them was the trustee's best estimate, based upon the data, of the actual time required on their separate problems.

On notice to all interested parties, a hearing was held before BJ Babitt on June 18, 1974, to consider (among other things) the allocation of administrative expenses proposed by the trustee, 80% to the fund, 20% to the general estate. The BJ declared that he was satisfied that this formula was "an administrative determination based upon experience, based upon what appears to be a permissible range" (SM 43); and that a more exact allocation would require too much time and effort (SM 43–44). Counsel for SIPC supported the allocation proposed by the trustee (SM 44); the BJ indicated that he relied on "the considered judgment of those charged with the administration of the statute" (SM 47), namely, SIPC, and relied "very heavily on the expertise of the trustee and his own experiences" (SM 49). The BJ also declared that the 80–20 allocation seemed "rational", that the "sums sound right" from the papers and "the reasonable prognosis" (SM 51), that it is "not arbitrary", that "it bears a rational rela-

tionship to their experience" (SM 52), that "I have already ruled that eighty-twenty sounds reasonable" (SM 57), and that the application of the trustee for 80%–20% allocation "is granted" (SM 57).

As the Bankruptcy Judge noted at the hearing (SM 48), SIPC was the largest claimant against the "single and separate fund" because SIPC is a priority claimant against that fund for its "advances" (15 U.S.C. § 78fff(c)(2)(B)). Thus, in supporting an allocation of 80% of expenses to that fund (rather than a smaller percentage) SIPC was not only exercising its expertise but was also putting aside its own selfish money interest.

The following day (June 19, 1974) BJ Babitt signed an order in which the 80%–20% allocation was "approved and confirmed in all respects". This order was filed on June 20, 1974.

Subsequently, on July 11, 1974, Mizrahi filed with the Bankruptcy Court a complaint in which it sought the allocation of *all* administrative expenses to the general estate, or alternatively, an allocation "supported by objective, quantifiable criteria" (Mizrahi complaint, p. 2).

The trustee filed an answer to the complaint on August 19, 1974.

The BJ set the matter for trial on September 10, 1974. The record does not disclose what happened on that date but apparently the trustee and Mizrahi agreed that the matter would be submitted on the papers; what these papers were does not appear, other than the complaint and answer.

2.

On September 17, 1975, Judge Babitt handed down his decision and opinion.

This decision ignores the express approval by the Bankruptcy Judge of the 80–20 allocation formula, an approval given in a written order (filed June 20, 1974) after a hearing and notice, an approval supported and asked for by SIPC (the largest claimant against the fund). Not only is such approval ignored but the 80–20 allocation is de-

scribed as "arbitrary" and "contrary to the equities". Judicial officers can (and often should) change their minds but a reversal so startling as that here encountered necessarily raises serious questions.

In his September 17, 1975 decision, Judge Babitt worked out an allocation formula of his own, the application of which results in a charge of 63% of administrative expenses to the fund (rather than the 80% earlier approved) and 37% to the general estate (rather than the 20% earlier approved).

An order on the September 17, 1975 decision was signed by Judge Babitt on November 20, 1975, and filed the same day.

This appeal then followed.

3.

Under SIPA, it seems to me that the Court has been given the authority to allocate administrative expenses between the fund and the general estate. A section of SIPA (15 U.S.C. § 78fff(c)(2)(B)) defines the assets which are to be placed in the fund and the creditors who are to share ratably in the distribution of those assets. The section then creates certain exceptions for payments from the fund to be made before any distribution to customer creditors. It provides, in relevant part:

" . . . except . . . (ii) to the extent that any other assets of the debtor may be available therefor *or as otherwise ordered by the court,* all costs and expenses specified in clauses (1) and (2) of section 104(a) of Title 11 shall be paid from such single and separate fund in priority to the claims of such single and separate class of creditors . . . ". (emphasis added)

The quoted passage can only mean that the expenses described in 11 U.S.C. § 104(a) are, *unless otherwise ordered by the court,* to be paid from assets *other* than those in the fund (namely, general estate assets) until such assets are exhausted. The Court, therefore, clearly is given the power to order an allocation of expenses which does not require exhaustion of the general estate before any expenses are paid from the fund.

Judge Babitt so decided and he is believed on this point to be right.

### 4.

The administrative expenses with which we are here concerned are almost entirely the fees and expenses of counsel, accountants, and supporting staff.

■ It is generally accepted that the equitable principle for allocating expenses is "let those pay who derive the primary benefit" (3A Collier on Bankruptcy, 14th ed., p. 1399).

■ The trustee's allocation followed this principle. The basis for fees to counsel, etc. is principally their time spent. Those who received the benefit of the *time spent* should pay the expense of that time. The trustee made the allocation of expenses depend on the allocation of time as between the problems of the fund and those of the general estate. This seems fair and reasonable.

### 5.

■ The allocation of the Bankruptcy Judge, on the other hand, seems divorced from the facts, unrelated to the facts.

First, the expenses are divided by the BJ into three categories:

(1) for marshalling assets;
(2) for allocating assets as between the fund and the general estate; and
(3) for distributing assets.

While this appears to serve no useful purpose, as a first step it cannot be said to be an error.

Then, however, the BJ must divide the expenses between the three categories. As he recognized, the data do not permit such division but forced to an ipse dixit the BJ ruled: "I deem it proper to attribute to each category an equal share of the administration expenses incurred." Thus, one-third of the total expenses was attributed to each of the three categories.

There is no support in the record for any such finding and the trustee (who should know) says it is contrary to fact.

As to category (2)—allocating assets between the fund and the general estate—the BJ indulged a presumption of law, that all assets belong to the fund in the first instance; then, it follows that all efforts to allocate assets on a factual and legal basis must, by definition, be of benefit only to the general estate on the theory that only by such efforts can there be any general estate; in consequence, all the expenses for allocating the assets are to be paid from the general estate.

There is nothing in SIPA which justifies the presumption of law.

There is nothing in the record which would justify charging all allocation efforts to the general estate. The law itself requires that such allocation be made.

As to categories (1) and (3), the BJ ruled that expenses which he had attributed to them (66⅔% of the total) should be divided between the fund and the general estate on the basis of size—the amount of assets in the fund and the general estate.

There is no rational connection between the sizes of the fund and the general estate and the benefits from the efforts of the trustee and others represented by the expenses. If, nevertheless, size were to be the basis for allocation, there is no logical reason why *all* the expenses for all categories should not be allocated on this basis. The result would be a charge of 95% to the fund, and 5% to the general estate—a result which seems far more inequitable (and much worse for appellee Mizrahi) than the 80%–20% formula proposed by the trustee and earlier approved by Judge Babitt.

The allocation of the Bankruptcy Judge is imaginative, ably explained, and the result of long and conscientious endeavor; it cannot stand, however, because it is contrary to law and without support in the factual record.

The order of November 20, 1975 is reversed and the matter is remanded to the Bankruptcy Judge for the entry of an order using the 80%–20% allocation first approved in the June 20, 1974 order.

SO ORDERED.